| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:07-CV-83** |
| | ) | **(Phillips)** |
| **JOSEPH A. BUAIZ,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion for Summary Judgment [Doc. 66] and the

Motion to Substitute [Doc. 79], both filed by the United States of America (the "United States").

On November 2, 2009, the United States filed a Motion for Summary Judgment seeking: (1) a

declaratory judgment that the Golden Light Ministry (the "Ministry") was Joseph Buaiz's ("Mr.

Buaiz") alter ego or nominee; (2) a declaratory judgment that the federal tax liens that were assessed

on Mr. Buaiz's property rights in July 1997 attached to the real property located at 1795 Rocky

Springs Road, Bean Station, Grainger County, Tennessee (the "Rocky Springs Property"); (3) a

declaratory judgment that the federal tax liens remain attached to the Rocky Springs Property; and

(4) that the Court order a foreclosure sale of the Rocky Springs Property to satisfy Mr. Buaiz's tax

indebtedness.

The following issues are before the Court. First, does the Court have subject matter

jurisdiction over this case? Second, are the claims brought by the United States barred by the

doctrine of claim preclusion? Third, was the Golden Light Ministry the alter ego or nominee of Mr.

1

Buaiz? Fourth, did Mr. Buaiz's federal tax lien attach to the Rocky Springs Property when the property was transferred to the Ministry in September 2003? Fifth, do the federal tax liens remain attached to that property? Sixth, should the Rocky Springs Property be sold in a foreclosure sale? Seventh, may Bonnie Buaiz's ("Ms. Buaiz") children be substituted as Defendants[1]?

For the following reasons, the United States's Motion for Summary Judgment [Doc. 66] is

**GRANTED IN PART AND DENIED IN PART**, whereby the Court makes the following rulings:

- The Court has subject matter jurisdiction in this case;

- The United States's claims are not barred by the doctrine of claim preclusion;

- The Golden Light Ministry was Joseph Buaiz's alter ego;

- The federal tax lien filed on July 31, 1997 attached to Joseph Buaiz's "property" and "rights to property," which includes any property interest he has in the Rocky Springs Property;

- The parties are **ORDERED** to brief the Court on: (1) what type of property interests Joseph Buaiz and Bonnie Buaiz (now her heirs ) had, and/or currently have, in the Rocky Springs Property; (2) what type of future property interests, if any, Joseph Buaiz has in the Rocky Springs Property; and (3) what effect, if any, Bonnie Buaiz's death has on the United States's ability to foreclose upon the Rocky Springs Property. **The briefs are due by NOVEMBER 29, 2010.**

- Assuming that Joseph Buaiz has a property interest in the Rocky Springs Property, the parties are **ORDERED** to brief the Court, in applying the factors set forth in United States v. Rodgers, 461 U.S. 677, 710-11 (1983), as to whether the Rocky Springs Property should

---

[1] Prior to this Memorandum and Order, there were four defendants in this case: Joseph Buaiz, Bonnie Buaiz, Merl Alan Crumpley, and the Golden Light Ministry. Joseph Buaiz and Bonnie Buaiz have appeared in this case *pro se*. Merl Alan Crumpley has not responded to any motions and is not represented by an attorney. The Golden Light Ministry has not responded to any motions. As the Court noted in a previous Memorandum and Opinion [Doc. 60 at 8-9], *pro se* litigants cannot argue on behalf of a corporation. The Court of Appeals for the Sixth Circuit has held that individual defendants cannot represent a corporation. *See, e.g.*, Harris v. Akron Dep't of Pub. Health, 10 F. App'x 316, 319 (6th Cir. 2001) ("Mauro may not proceed on behalf of Urban Imperial Building and Rental Corporation, as a corporation must be represented in court by an attorney and may not be represented by an officer."); Doherty v. Am. Motors Corp., 728 F.2d 334, 340 (6th Cir. 1970) ("The rule of this circuit is that a corporation cannot appear in federal court except through an attorney."). Because only Joseph Buaiz and Bonnie Buaiz have responded in this matter, the term "Defendants" only refers to them.

be sold in a foreclosure sale pursuant to 26 U.S.C. § 7403(c). **The briefs are due by NOVEMBER 29, 2010.**

In addition, the United States's Motion to Substitute [Doc. 79] is **GRANTED**, whereby Jill Susan Harbin, Joseph Anthony Buaiz, III, and Bethany Sue Buaiz **SHALL BE SUBSTITUTED AS DEFENDANTS**. The United States shall effect service upon these Defendants within fourteen days of entry of this Memorandum and Order, as provided in Rule 25(a)(3) of the Federal Rules of Civil Procedure. In addition, Bonnie Buaiz is **HEREBY REMOVED AS A DEFENDANT**.

Finally, because the only remaining issue in this case involves whether a foreclosure sale is appropriate, the final pretrial conference date of September 28, 2010, and the trial date of October 5, 2010, **ARE HEREBY CANCELLED**.

## I. BACKGROUND

The United States and Mr. Buaiz were adversaries in a prior lawsuit. On July 24, 2006, Mr. Buaiz filed suit in the United States District Court for the District of Columbia, claiming damages under 26 U.S.C. § 7433. Mr. Buaiz sought damages for alleged wrongful collection activities by the Internal Revenue Service ("IRS"). In response, the United States filed counterclaims, arguing that Mr. Buaiz did not file his federal income tax returns ("Form 1040") for the 1993 and 1994 tax years. The United States sought to reduce the tax penalties to judgment, and also sought civil penalties for 1989 through 1994. On November 26, 2007, the Honorable Rosemary M. Collyer, United States District Judge, granted summary judgment on the counterclaims in favor of the United States. Buaiz v. United States, 521 F. Supp. 2d 93 (D.D.C. 2007). Judge Collyer entered judgment against Mr. Buaiz in the amount of $38,315.98 for unpaid taxes. Id. Judge Collyer also dismissed Mr. Buaiz's complaint. Id.

On March 8, 2007, the United States filed suit in this Court. [United States's Complaint,

3

Doc. 1]. In Count I of the original complaint, the United States requested that the Court declare Mr. Buaiz liable for $29,792.00 in unpaid taxes. [Id. at 3-4]. In Count II, the United States requested that the Court declare Mr. Buaiz liable for $6,653 as a frivolous filing penalty. [Id. at 4-5]. In a Memorandum and Order entered on September 17, 2008, the Court dismissed Counts I and II of the original complaint, finding that those claims were barred by the doctrine of claim preclusion. [Memorandum and Order Denying the United States's Motion for Summary Judgment, Doc. 57 at 2-4]. In particular, the Court held that Counts I and II of the original complaint were identical to the counterclaims filed by the United States in the prior lawsuit. [Id.].

Following the dismissal of Counts I and II of the original complaint, Defendants filed a Motion for Judgment on the Pleadings [Doc. 52], arguing that the United States's claims were barred by the doctrine of claim preclusion. On December 11, 2008, the Court entered a Memorandum and Order denying the motion. [Doc. 60]. However, the Court directed the United States to amend its complaint, which it did on December 18, 2008. [See United States's Amended Complaint, Doc. 61].

On January 5, 2009, Defendants moved to dismiss the amended complaint, arguing that the Court lacked subject matter jurisdiction, and that the doctrine of claim preclusion barred the United States's claims. [Defendants' Motion to Dismiss the Amended Complaint, Doc. 62]. On March 31, 2010, the Court denied that motion [Doc. 78]. In particular, the Court asserted that it has subject matter jurisdiction under 28 U.S.C. § 1340. [Id.]. The Court also held that the complaint, as amended, was not barred by the doctrine of claim preclusion. [Id.].

On November 2, 2009, the United States filed a Motion for Summary Judgment [Doc. 66]. On November 30, 2009, Defendants responded to the Motion for Summary Judgment [Doc. 67]. On December 1, 2009, the United States filed a reply [Doc. 73]. On December 16, 2009, the

Defendants filed a sur-reply [Doc. 73]. In addition, on August 24, 2010, the United States filed a Motion to Substitute [Doc. 79].

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zendith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); *see also, e.g.* Bridgeport Music, Inc. v. WB Music Corp., 508 F.3d 394, 397 (6th Cir. 2007) ("The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the non-moving party."). With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. The burden then shifts to the non-moving party to demonstrate the existence of genuine issues of material fact. Id. at 324. The non-moving party demonstrates the existence of genuine issues of material fact by "going beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file . . ." Id. If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment.

## III.    ANALYSIS

### A.    The Court Has Subject Matter Jurisdiction

In their Response to the Motion for Summary Judgment [Doc. 67], Defendants argue that the Court lacks subject matter jurisdiction.  In particular, Defendants argue that the "authority for District Courts to grant declaratory relief in cases involving Federal taxes does not exist." [Defendants' Sur-Reply in Response to the United States's Motion for Summary Judgment, Doc. 73 at 5].  Defendants argue that neither the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "DJA"), or any other statute provides authority.  [Id.].

The Court has rejected this argument on multiple occasions.  On October 23, 2007, the Court stated "[w]ith respect to the motion to dismiss for lack of subject matter jurisdiction, jurisdiction over this action is conferred by 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7402 and 7403." [Memorandum and Order Denying Defendants' Motion to Dismiss the Complaint, Doc. 19 at 2]. On March 31, 2010, the Court stated that it "has already considered whether it has jurisdiction over the complaint, as amended, under 28 U.S.C. § 1340, 1345; 26 U.S.C. § 7402, 7403." [Memorandum and Order Denying Defendants' Motion to Dismiss the Amended Complaint, Doc. 78 at 2].

While it is true that the DJA does not confer authority on the Court to issue declaratory relief, the Court derives its authority from other statutes.  When an individual fails to pay an assessed tax, a lien in that amount arises in favor of the United States "upon all property and rights, whether real or personal, belonging to such person."  26 U.S.C. § 6321.  The lien "arise[s] at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied. . . ."  26 U.S.C. § 6322.  Pursuant to

26 U.S.C. § 7403, "the government may file a civil action to enforce the lien and subject the delinquent taxpayer's property to the payment of such tax liability." United States v. Offiler, 336 F. App'x 907, 908 (11th Cir. 2009) (citing 26 U.S.C. § 7403(a)). If the district court finds that the United States's tax lien has been established, it "may decree a sale of such property . . . and a distribution of the proceeds of such sale . . ." 26 U.S.C. § 7403(c).

In United States. v. Johnson, the United States requested that the court: (1) reduce to judgment tax assessments made against a defendant; (2) declare and set aside as fraudulent a transfer of title to real property; and (3) foreclose federal tax liens against that defendant. No. 01C50125, 2001 WL 1018772, at *1 (N.D. Ill. Aug. 31, 2001). The district court recognized that it had jurisdiction under 26 U.S.C. §§ 7402 and 7403, and 28 U.S.C. §§ 1340 and 1345. Id. The claims in the present case are nearly identical to the claims in Johnson. Accordingly, the Court has subject matter jurisdiction under 26 U.S.C. §§ 7402 and 7403, and 28 U.S.C. §§ 1340 and 1345.

**B.** **The Amended Complaint Is Not Barred by the Doctrine of Claim Preclusion**

In their Response to the Motion for Summary Judgment [Doc. 67], Defendants argue that the United States's claims are barred by the doctrine of claim preclusion. In particular, Defendants argue the following:

> This Court has already ruled summary judgment is inappropriate in the instant matter owing to the fact the 'causes of action' plaintiff attempts to relitigate have already been reduced to a valid enforceable judgment by another United States District Court. This Court, therefore, lacks the authority to adjudicate said 'causes of action' a second time and plaintiff's requests for declaratory relief are barred by the Declaratory Judgment Act.

[Defendants' Response to the United States's Motion for Summary Judgment, Doc. 67 at 1]. The Court has already rejected this argument. [Memorandum and Order Denying Defendants' Motion to Dismiss the Amended Complaint, Doc. 78 at 2].

In the prior litigation, the United States asserted three counterclaims against Mr. Buaiz. These included claims for: (1) the income tax, interest, and penalties for the 1993 tax year; (2) the income tax, interest, and penalties for the 1994 tax year; and (3) frivolous filing penalties for the tax periods 1989 through 1994. [United States's Answer and Counterclaim in the Prior Lawsuit, Doc. 33-2]. On November 26, 2007, the Honorable Rosemary M. Collyer, United States District Judge, entered summary judgment on the counterclaims in favor of the United States. Judge Collyer entered judgment against Mr. Buaiz in the amount of $38,315.98 for unpaid taxes, and dismissed Mr. Buaiz's complaint.

On March 8, 2007, the United States filed suit in this Court. [Doc. 1]. In Count I of the original complaint, the United States requested that the Court declare Mr. Buaiz liable for $29,792.00 in unpaid taxes. [Id. at 3-4]. In Count II, the United States requested that the Court declare Mr. Buaiz liable for $6,653 as a frivolous filing penalty. [Id. at 4-5]. In a Memorandum and Order entered on September 17, 2008, the Court dismissed Counts I and II of the original complaint, finding that those claims were barred by the doctrine of claim preclusion. [Memorandum and Order Denying the United States's Motion for Summary Judgment, Doc. 57 at 2-4]. In particular, the Court held that Counts I and II of the original complaint were identical to the counterclaims filed by the United States in the prior lawsuit. [Id.]. Count I of the original complaint embodied the income tax, interest, and penalties for the 1993 and 1994 tax years. Count II embodied the frivolous filing penalties.

On December 18, 2008, the United States filed its Amended Complaint. [Doc. 61]. Count I of the Amended Complaint is titled, "Declaratory judgment that Bonnie Sue Buaiz, Merl Alan Crumpley, and the Golden Light Ministry are nominees of Joseph A. Buaiz." [Id. at 3]. Count II

of the Amended Complaint is titled, "Foreclose federal tax liens against the real properties known as 1795 Rocky Springs Road, Bean Station, Tennessee." [Id. at 10].

The Court finds that the United States's claims, as amended, are not barred by the doctrine of claim preclusion. Claim preclusion has four elements: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privities; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." Rivers v. Barberton Bd. of Educ., 143 F.3d 1029, 1031 (6th Cir. 1998).

First, the United States is not attempting to re-litigate the same cause of action. The Court dismissed Counts I and II of the original complaint because the United States was attempting to enforce a judgment that was already entered by a sister court. In contrast, the substance of Counts I and II of the amended complaint (which were Counts III and IV of the original complaint) were not litigated in the prior lawsuit. Judge Collyer entered judgment against Mr. Buaiz in the amount of $38,315.98 for unpaid taxes (and penalties), but she did not decide whether the Rocky Springs Property should be foreclosed upon. In its counterclaim in the prior lawsuit [Doc. 33-2], the Untied States did not raise any claims related to its alter ego theory. In addition, the United States did not seek foreclosure in the prior lawsuit. The only issue in the prior proceeding was whether Mr. Buaiz was liable for unpaid taxes and penalties. Because the present case involves issues that were not litigated in the prior proceeding, the United States's claims are not barred by the doctrine of claim preclusion. See Rivers, 143 F.3d at 1031.

### C.    The Golden Light Ministry Was the Alter Ego of Joseph Buaiz

#### 1.    Relevant Facts

As an initial matter, the Court notes that Defendants have not challenged the United States's evidence regarding the Ministry. In fact, Defendants have not presented any evidence in opposition to the United States's claim that the Ministry was the alter ego of Mr. Buaiz.

As stated earlier, Mr. Buaiz failed to file federal tax returns for the 1993 and 1994 tax years. In July 1997, the IRS filed a notice of federal tax lien with the Grainger County Register of Deeds. [*See* IRS Federal Tax Lien Notice, Doc. 66-8]. The judgment rendered by Judge Collyer included $31,371.34 for Mr. Buaiz's failure to pay his 1993 and 1994 federal income taxes.

In 1987, Mr. Buaiz and Ms. Buaiz began residing at 1795 Rocky Springs Road, Bean Station, Grainger County, Tennessee.[2] On September 12, 2003, Mr. Buaiz signed the Articles of Incorporation for a Nevada corporation titled, "The Presiding Overseer of the Golden Light Ministry, and his Successors, a Corporation Sole." [Articles of Incorporation, Doc. 66-9]. The Articles of Incorporation stated that "the Elders of THE PRESIDING OVERSEER OF THE GOLDEN LIGHT MINISTRY, AND HIS SUCCESSORS, A CORPORATION SOLE, appointed Joseph Anthony Buaiz, Jr. as Presiding Overseer . . ." [Id. at 2]. The only officer of record in the Ministry was Mr. Buaiz, who was known as the "presiding overseer." [*See* id]. The Articles of Incorporation were filed with the Nevada Secretary of State on October 6, 2008. [Id.].

---

[2] On November 30, 2006, Mr. Buaiz told Adrian Cameron, a Grainger County Sheriff's Deputy, that he had lived at the Rocky Springs Property for twenty years. [Declaration of Adrian Cameron, Doc. 66-2].

Property records also indicate that Mr. Buaiz began living at the Rocky Springs Property in 1987. On November 2, 1987, Mr. Buaiz and Ms. Buaiz signed a promissory note to Knox K. Samsel in the amount of $22,000.00. [Promissory Note, Doc. 66-3]. In 1995, Knox K. Samsel and Betty Samsel conveyed to Ms. Buaiz a parcel of real property located at 1795 Rocky Springs Road, Bean Station, Grainger County, Tennessee. [1995 Warranty Deed, Doc. 66-4]. In 1996, Albert C. Samsel and Martha J. Samsel conveyed to Ms. Buaiz another parcel of real property located at 1795 Rocky Springs Road, Bean Station, Grainger County, Tennessee. [1996 Warranty Deed, 66-5].

On the same day that the Articles of Incorporation were signed (September 12, 2003), Ms. Buaiz quitclaimed to the Ministry the two parcels of land (the Rocky Springs Property) that she received from the Samsels. [Quitclaim Deed of September 12, 2003, Doc. 66-12]. The Quitclaim Deed listed the Ministry's address as "1795 Rocky Springs Rd, Bean Station, TN 37708." [Id.]. The Quitclaim Deed also stated that the grantee (the Ministry) did not pay anything in consideration for the property. [Id.].

In addition to having the Rocky Springs Property quitclaimed to the Ministry, Mr. Buaiz and Ms. Buaiz opened a personal checking account for the Ministry. [*See* Collection of Financial Documents, Doc. 66-13]. The Ministry opened a checking account with Citizens Bank. [Id.]. The account holder's name was listed as "Presiding Overseer of the Golden Light Ministry, and his Successors, a Corporation Sole." [Id. at 1]. The account listed the Ministry's mailing and street address as "1795 Rocky Springs, RD, Bean Station, TN 37708." [Id.]. The account also listed Mr. Buaiz and Ms. Buaiz as the only ones with signature authority. [Id.]. Mr. Buaiz and Ms. Buaiz used the checking account to pay for their personal expenses, which included utility bills and groceries. [Id.].

On February 27, 2004, the Ministry quitclaimed the Rocky Springs Property to Merl Alan Crumpley, the son of Ms. Buaiz. [Quitclaim Deed of February 27, 2004, Doc. 66 at 16]. In July 2007, the Ministry filed a certificate of Mr. Buaiz's resignation from the "Office of Overseer." [Certificate of Resignation, Doc. 66-11]. The Certificate of Resignation was filed with the Nevada Secretary of State. [Id.].

## 2.       The Effect of Federal Tax Liens on State-Created Property Rights

When Mr. Buaiz failed to pay an assessed tax, a lien in that amount arose in favor of the

United States "upon all property and rights, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The lien "arise[s] at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied. . . ." 26 U.S.C. § 6322. Pursuant to 26 U.S.C. § 7403, "the government may file a civil action to enforce the lien and subject the delinquent taxpayer's property to the payment of such tax liability." Offiler, 336 F. App'x at 908 (citing 26 U.S.C. § 7403(a)). If the district court finds that the United States's tax lien has been established, it "may decree a sale of such property . . . and a distribution of the proceeds of such sale . . ." 26 U.S.C. § 7403(c).

While federal tax liens attach to "all property and rights" of a delinquent taxpayer, state law determines whether a property right exists. *See* Drye v. United States, 528 U.S. 49, 58 (1999). As the Supreme Court has stated, when the United States assesses a tax lien, the threshold inquiry "is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach." Aquillino v. United States, 363 U.S. 509, 512 (1960). Thus, the Court begins with the general rule that "[a] federal tax lien does not arise or attach to property *in which a person has no interest under state law*." Spotts v. United States, 429 F.3d 248, 251 (6th Cir. 2005) (emphasis added) (citing United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985) ("[I]n application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property.") (internal citations omitted)). *See also* Spotts, 429 F.3d at 251 ("Once state law determines that a property interest exists, federal law dictates the tax consequences.") (citing Nat'l Bank of Commerce, 472 U.S. at 722); Drye, 428 U.S. at 59 (holding that courts look to "state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as

property or rights to property within the compass of federal tax lien legislation."). The Court must therefore look to Tennessee law to determine whether Mr. Buaiz's state-created property interests qualify "as property or rights to property within the compass of federal tax lien legislation." Drye, 482 U.S. at 59.

In this case, the United States wants to foreclose upon the Rocky Springs Property. However, before the Court may order a foreclosure sale of that property, it must determine whether Mr. Buaiz has a property interest in that property. As explained earlier, on September 12, 2003, Ms. Buaiz quitclaimed to the Ministry the two parcels of land (the Rocky Springs Property) that she received from the Samsels. [Quitclaim Deed of September 12, 2003, Doc. 66-12]. On February 27, 2004, the Ministry quitclaimed the Rocky Springs Property to Merl Alan Crumpley, the son of Ms. Buaiz. [Quitclaim Deed of February 27, 2004, Doc. 66 at 16]. The United States argues that Mr. Buaiz had a property interest in the Rocky Spring Property before those transfers, and that the federal tax lien–which attached "upon all property and rights" under 26 U.S.C. § 6321–remains attached to the Rocky Springs Road.

In addition, the United States requests that the Court declare that the Ministry–a corporation– was the alter ego of Mr. Buaiz. [Brief in Support of the United States's Motion for Summary Judgment, Doc. 66-1 at 5-13]. The United States argues that when Ms. Buaiz quitclaimed the Rocky Springs Property to the Ministry, she actually transferred title to Mr. Buaiz. As the Court of Appeals for the Sixth Circuit has explained, "[t]he Supreme Court has broadly interpreted section 6321 to include not only the property and rights to property owned by the delinquent taxpayer, *but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer*." Spotts, 429 F.3d at 251 (emphasis added) (citing

G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-51 (1977)).  The Court must apply Tennessee law to determine whether the Ministry was Mr. Buaiz's alter ego.  *See* Spotts, 492 F.3d at 251 (finding that the district court erred in not looking to state law to determine whether the delinquent taxpayer had an alter ego).

### 3.    The Golden Light Ministry Was the Alter Ego of Joseph Buaiz

As a general rule, a corporation "is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors."  Nadler v. Mountain Valley Chapel Bus. Trust, No. E2003-00848-COA-R3-CV, 2004 WL 1488544, at *4 (citing Schlater v. Haynie, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)).  However, a corporation's separate identity may be disregarded or "pierced" upon showing "that it is a sham or a dummy or where necessary to accomplish justice."  Schlater, 833 S.W.2d at 925.  However, courts should disregard a corporation's identity "with great caution and not precipitately."  Id.  In addition, "[t]he burden is on the party seeking to pierce the corporate veil to prove facts sufficient to warrant such an action."  Nadler, 2004 WL 1488544, at *4 (citing Schlater, 833 S.W.2d at 925).

When a corporation's veil is pierced, it is done "for the benefit of creditors of the corporation, allowing them to proceed against the individuals who are the 'trust owners of the entity.'"  Reagan v. Connelly, No. E2000-00451-COA-R3-CV, 2000 WL 1661524, at *6 (Tenn. Ct. App. Nov. 6, 2000) (quoting Muroll Gessellschaft M.B.H. v. Tennessee Tape, Inc., 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995)).  Although this case involves a principal-corporation relationship, the Court finds that the following factors–which Tennessee courts apply in the subsidiary-parent context–are equally applicable:

> (1)    The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and

business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction had no separate mind, will or existence of its own.

(2)    Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of third parties' rights.

(3)    The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo, 578 S.W.2d 625, 632 (Tenn. 1979).  Other factors to consider include:

> . . . [the] failure to observe [corporate] formalities . . . siphoning of corporate funds by dominant stockholders, non-functioning of other officers and directors, absence of corporate records . . . and use of the corporate entity in promoting injustice or fraud . . . The failure to distinguish between corporate and personal property, the use of corporate funds to pay personal expenses without proper accounting . . .

Amberjack, Ltd. v. Thompson, Case No. 02A01-9512-CV-00281, 1997 WL 613676, at *10 (Tenn. Ct. App. Oct. 7, 1997) (quoting Fletcher, *Cyclopedia of the Law of Private Corporations*, § 41.30 (1990)).  As the Tennessee Court of Appeals has stated, "[e]ach case involving disregard of the corporate entity must rest upon its special facts.  Generally, no one factor is conclusive in determining whether or not to disregard a corporate entity; usually a combination of factors is present in a particular case and is relied upon to resolve the issue."  Schlater, 833 S.W.2d at 925 (citations omitted).

Although "[t]he principles of piercing the fiction of the corporate veil is to be applied with great caution," the Court finds that piercing the corporate veil is appropriate in this case.  Id. (citations omitted).  In particular, the Court finds that: (1) the Ministry did not have an existence separate from Mr. Buaiz; and (2) the interests of justice are served by piercing the veil of the Ministry.  The Court of Appeals for the Sixth Circuit has expressly upheld "[t]he tactic of

15

proceeding against the nominee of a taxpayer for the purpose of satisfying the taxpayer's tax obligations . . ." <u>Lemaster v. United States</u>, 891 F.2d 115, 119 (6th Cir. 1989) (citing <u>Loving Saviour Church v. United States</u>, 728 F.2d 1085 (8th Cir. 1984); <u>Valley Fin., Inc. v. United States</u>, 629 F.2d 162, 171-73 (D.C. Cir. 1980), *cert denied*, 451 U.S. 1018 (1981)).

First, the Court finds that the Ministry did not have an existence separate from its principal, Mr. Buaiz. A corporation is an alter ego "where one person or entity acts like, or for another to the extent that they may be considered identical." <u>Loving Saviour Church</u>, 556 F.Supp. 688, 691 (D.S.D. 1983). The facts of the present case are similar to <u>United States v. Wodtke</u>, in which a court held that the assets of a church could be levied upon to satisfy a taxpayers' indebtedness. 627 F.Supp. 1034 (N.D. Iowa 1985). Because the court found that the church was the alter ego of the taxpayer, it held that its assets could be levied upon. <u>Id</u>. at 1044. In <u>Wodtke</u>, the taxpayers created a church, took vows of property, and quitclaimed their farm to themselves as trustees for the church. <u>Id</u>. at 1037-38. After the transfer, the taxpayers continued to reside at the farm in the same manner as before the transfer. <u>Id</u>. at 1038. The taxpayers also opened a bank account for the church, but they were the only ones with signature authority. <u>Id</u>. Under these circumstances, the court found that the church did not have an existence separate from the taxpayers. <u>Id</u>. at 1043. As the court stated:

> From its inception, the Church has been the alter ego of [the taxpayers]; the evidence failed to demonstrate that it has any existence separate and apart from the [taxpayers]. Therefore, the real and personal property purportedly transferred remained subject to federal tax liens against the [taxpayers] and could be levied on to satisfy the [taxpayers'] tax liabilities.

<u>Id</u>. (citations omitted)

In the present case, the Ministry opened a personal checking account with signature authority

in Mr. Buaiz and Ms. Buaiz. [*See* Collection of Financial documents, Doc. 66-13]. The account listed the Ministry's mailing and street address as "1795 Rocky Springs, RD, Bean Station, TN 37708." [Id.]. Mr. Buaiz continued to live at that address even after the Rocky Springs Property was transferred to the Ministry in September 2003. [Id.]. Notably, Mr. Buaiz and Ms. Buaiz used the checking account to pay for their personal expenses, including utility bills and groceries. [Id.]. In addition, the Ministry paid car insurance premiums for Mr. Buaiz. [Id.].

As the United States correctly recognizes, "Jospeh Buaiz maintained the same relationship to his personal assets as if they had been titled in his name." [United States's Brief in Support of its Motion for Summary Judgment, Doc. 66-1 at 11]. Because Mr. Buaiz exercised complete control over the Ministry's finances, and because he continued to use his assets in the same manner as before the Ministry was incorporated, the Court finds that the United States has met its burden of proving that the Ministry did not have an existence separate from its principal. Moreover, the Court notes that Defendants have not provided any evidence to the contrary.

Second, the Court finds that the interests of justice are served by piercing the corporate veil of the Ministry. The Court agrees with the United States that "[w]here a corporation's sole purpose is to hide the ownership of its principal's personal assets as a means of frustrating the collection of tax debts, justice requires disregard of the corporation's separate existence." [United States's Brief in Support of its Motion for Summary Judgment, Doc. 66-1 at 7]. Federal courts have routinely pierced the corporate veils of religious entities used to conceal personal tax assets. *See* Loving Saviour Church, 566 F.Supp. 688, 692 (D.S.D. 1984) ("Clearly, the Government's inability to satisfy legitimate tax debts may form a sound basis for disregarding a corporate form.") (citations omitted); Church of Hakeem, Inc. v. United States, No. C-79-0741 SW, 1979 WL 1475, at *5 (N.D. Cal. Aug.

31, 1979) (holding that the IRS did not wrongfully levy upon the assets of a church that a delinquent taxpayer founded and controlled because the taxpayer bought property through the church's name and used it for personal use, and the taxpayer exerted complete control over the church's assets) ("The claim of the Church as to ownership must be viewed with suspicion since Rasheed [the delinquent taxpayer and founder of the church] controls and runs its activities. Even if Rasheed is innocent of any fraudulent activities, there is such a unity of interest between the two that the individuality or separateness of Rasheed and the Church is not discernible."); All One Faith in One God State Universal Life Church, Inc. v. United States, No. 74-268-E, 1976 WL 1017 (S.D. Cal. Mar. 9, 1976). *Cf.* G.M. Leasing Corp. v. United States, 514 F.2d 935 (10th Cir. 1975), *reversed in part on other grounds*, 429 U.S. 338 (1977) (affirming the IRS's decision to seize automobiles belonging to the company in order to satisfy the tax liabilities of the sole owner of the corporation because the taxpayer exerted substantial control over the corporation, the taxpayer transferred personal property to the corporation for no consideration, the taxpayer used corporate property for personal use, and the taxpayer purchased the automobiles in the corporate name but allowed his wife to personally use it).

In Loving Saviour Church, the taxpayers transferred all their property to a church that they created. 728 F.2d 1085. The transferred property included the taxpayers' residence and automobiles. Id. at 1086. Following the transfer, the taxpayers continued to use the property in the same manner as before. Id. The issue before the district court was whether the property titled in the name of the church was available to satisfy the federal tax lien against the taxpayers. Id. The district court concluded that the church was the taxpayers' alter ego, and the court of appeals affirmed. Id. The courts considered the following factors in reaching this conclusion:

<table>
<tr><td>(1)</td><td>the [taxpayers] treated church assets as their own in that their residence, business and farmland comprised the church property;</td></tr>
<tr><td>(2)</td><td>[one taxpayer] carried insurance on church assets in his own name;</td></tr>
<tr><td>(3)</td><td>there were few internal controls in the church- [one taxpayer] was the minister and a trustee along with [the other taxpayer and their family members];</td></tr>
<tr><td>(4)</td><td>church funds were used to pay personal expenses;</td></tr>
<tr><td>(5)</td><td>there was a close family relationship between the church officers and the taxpayer/founder;</td></tr>
<tr><td>(6)</td><td>the taxpayers transferred property to the church for little or no consideration;</td></tr>
<tr><td>(7)</td><td>a car which was in the church's name bore the personalized license [with one taxpayer's first name];</td></tr>
<tr><td>(8)</td><td>the [taxpayers] are fully supported by the funds and property of the Loving Saviour Church in whatever style they themselves choose.</td></tr>
</table>

Id.

Applying these factors to the present case, it is clear that Mr. Buaiz treated the Ministry assets as his own. In fact, his residence comprised the Ministry property. In addition, Ministry funds were used to pay for his personal expenses. While Mr. Buaiz created a checking account for the Ministry, he used the account to pay for personal expenses, such as utility bills and groceries. Moreover, Ms. Buaiz transferred the Rocky Springs Property to the Ministry for no consideration.

Based on the foregoing, the Court finds that the Ministry was the alter ego of Mr. Buaiz. Because the Defendants have not provided any evidence to the contrary, the Court is left to conclude that the Ministry was established for the purpose of hiding Mr. Buaiz's tax assets. Accordingly, the Court finds that the interests of justice are served by piercing the corporate veil of the Ministry.

**D.      The Federal Tax Lien Attached to Joseph Buaiz's "Property Rights" on July 31, 1997, and Remains Attached**

As explained earlier, Mr. Buaiz failed to file his federal tax returns for the 1993 and 1994 tax years. On July 31, 1997, the IRS filed a notice of federal tax lien for tax years 1993 and 1994 with the Grainger County Register of Deeds. [IRS Federal Tax Lien Notice, Doc. 66-8]. The Document stated that Mr. Buaiz owed $6898.27 for the 1993 tax year, and owed $7159.91 for the 1994 tax year. Id. The federal tax lien on Mr. Buaiz's "property and rights, whether real or personal," 26 U.S.C. § 6321, arose on that date because that is when the assessment was filed. *See* 26 U.S.C. § 6322 (stating that the lien "arise[s] at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied. . . ."). *See also* Wayne County Bd. of County Comm'rs. v. Mendel, Inc., 22 F. App'x 488, 491 (6th Cir. 2001) ("Tax liens attach to all property rights the taxpayer then holds or subsequently acquires, and continue until the underlying tax liability is satisfied or becomes unenforceable.") (citations omitted).

In addition, the federal tax lien remained attached to any subsequent transfers of property rights held by Mr. Buaiz. *See* Valley Fin., Inc., 629 F.2d at 168-60. Thus, when Ms. Buaiz quitclaimed the Rocky Spring Road Property to the Ministry on September 12, 2003, the federal lien remained attached to Mr. Buaiz's property rights in that property. *See* United States v. Rodgers, 461 U.S. 677, 691 n. 16 (1983) ("Of course, once a lien has attached to an interest in property, the lien cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of the interest.") (citations omitted). As the Court of Appeals for the Sixth Circuit has stated, "[o]ne effect of a tax lien is that a third party possessing property or rights to property belonging to a taxpayer holds such property subject to the lien, unless the third party has a prior lien or comes within one of the exceptions listed in 26 U.S.C. § 6321." United States v. Bank of Celina, 721 F.2d

163, 166 (6th Cir. 1983) (citations omitted).  In this case, the federal tax lien was assessed on July 31, 1997, so the federal tax lien on Mr. Buaiz's property rights relates back to that date.  In addition, none of the circumstances listed in 26 U.S.C. § 6321 apply in this case.  Accordingly, the Court finds that the federal tax lien remains attached to Mr. Buaiz's property rights.

### E.     The Court Will Not Order Foreclosure At This Time

Under 26 U.S.C. § 7403, federal district courts may decree the sale "of certain properties to satisfy the tax indebtedness of delinquent taxpayers . . ." Rodgers, 461 U.S. at 680.  Section 7403(c) provides:

> Adjudication and decree- The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, *may decree a sale of such property*, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.  If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

26 U.S.C. § 7403(c) (emphasis added).  As the Supreme Court has stated, the "lien of the United States" referred to in § 7403 is created by 26 U.S.C. § 6321.  Rodgers, 461 U.S. at 681-82.  Section 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321.  While the sale authorized under § 7403 is not mandatory, district courts have only limited discretion in refusing to order the foreclosure sale.  Rodgers, 461 at 706 (holding that "§ 7403 does not require a district court to authorize a forced sale under absolutely all circumstances,

and that some limited room is left in the statute for the exercise of reasoned discretion.").

In Rodgers, the Supreme Court held that § 7403 empowered a district court to order the foreclosure sale of a family home that the delinquent taxpayer had an interest in. Id. at 704. In Rodgers[3], Mr. Rodgers and Ms. Rodgers acquired, as community property, a residence in Dallas, Texas that they occupied as their homestead. Id. at 687. Subsequent to that purchase, the IRS filed assessments against Mr. Rodgers for unpaid federal taxes. Id. The taxes remained unpaid at the time of Mr. Rodgers's death, but Ms. Rodgers continued to occupy the property as her homestead. Id. Under Texas law, each spouse has a separate interest in the homestead, "which is only lost by death or abandonment and may not be compromised by either the other spouse or his or her heirs, and which in effect is an interest akin to an undivided life estate in the property." Id.

In Rodgers, the United States filed suit against Ms. Rodgers (the widow of the delinquent taxpayer), the taxpayer's children, and the executor of the taxpayer's estate. Id. The United States filed suit under 26 U.S.C. § 7403, seeking to reduce to judgment the assessment filed against Mr. Rodgers for unpaid taxes, and to enforce the tax liens by attaching to his property rights in the homestead. Id. Ms. Rodgers argued that the federal tax liens could not defeat her "state-created right not to have her homestead (which she continued to occupy) subjected to a forced sale." Id. Both the district court and court of appeals agreed with Ms. Rodgers. The United States then appealed to the Supreme Court.

When the case reached the Supreme Court, it framed the issue as follows: whether "§ 7403 empowers a federal district court to order the sale of a family home in which a delinquent taxpayer

---

[3] United States v. Rodgers, 461 U.S. 677 (1983), consisted of two cases that were consolidated before the Supreme Court. However, the Court will only focus on the facts of the lawsuit involving Mr. Rodgers.

had an interest at the time he incurred his indebtedness, but in which the taxpayer's spouse, who does not owe any of that indebtedness, also has a separate 'homestead' right as defined by Texas law." Id. at 680. The Court began its analysis by examining the property rights as created by state law. Id. at 683 ("Moreover, it has long been an axiom of our tax collection scheme that, although the definition of underlying property interests is left to state law, the consequences that attach to those interests is a matter left to federal law.") (citations omitted). Under the Texas homestead laws, each spouse in a marriage has "a separate and undivided possessory interest in the homestead, which is only lost by death or abandonment, and which may not be compromised either by the other spouse or by his or her heirs." Id. at 685. While the Court recognized that "the Government's lien under § 6321 cannot extend beyond the property interests held by the delinquent taxpayer," the Court rejected the lower courts' reasoning. Id. at 690-91. In particular, the Supreme Court rejected the lower court's view that the United States could only seek the sale of the delinquent taxpayer's *interest* in the property, and not the entire property. Id. at 691. The Supreme Court based much of its reasoning on the broad language of § 7403. Id. at 691-97.

As for the spouse of the non-delinquent taxpayer, the Supreme Court provided the following remedy:

> To the extent that third-party property interests are 'taken' in the process, § 7403 provides compensation for that 'taking' by requiring that the court distribute the proceeds of the sale 'according to the findings of the court in respect to the interests of the parties and of the United States.' Morever, we hold, on the basis of what we are informed about the nature of the homestead estate in Texas, that is the sort of property interest for whose loss an innocent third-party must be compensated under § 7403.

Id. at 697-98 (internal citations omitted). Thus, if the home is sold, the "non-delinquent spouse is entitled, as part of the distribution of proceeds required under § 7403, to so much of the proceeds

as represents complete compensation for the loss of the homestead estate." Id. at 677.

In addition, the Supreme Court held that district courts are not required, but have the discretion, to order foreclosure sales under § 7403. Id. at 706-09. Although district courts have only limited discretion, they should consider the following factors:

> First, a court should consider the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes. . . .

> Second, a court should consider whether the third party with a non-liable separate interest in the property would, in the normal course of events . . . have a legally recognized expectation that the separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors. . . .

> Third, a court should consider the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompensation . . .

> *Fourth, a court should consider the relative character and value of the non-liable and liable interests of the property . . .*

Id. at 710-11 (emphasis added). The Supreme Court also instructed that when considering these factors, district courts should use their discretion "rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." Id. at 711.

In Craft v. United States, the wife of a delinquent taxpayer owned property as tenants by the entirety with her husband. 140 F.3d 638, 639 (6th Cir. 2001) ("Craft I"). In 1988, the IRS filed a notice of federal tax lien under 26 U.S.C. § 6321 on the husband's property for unpaid taxes. Id. After the lien was filed, the entireties property was transferred solely to Ms. Craft. Id. When she attempted to sell the residence, she discovered the federal tax lien on her husband's property rights. Id. at 640. The IRS agreed to release the lien if Ms. Craft placed half of the proceeds of the sale into an escrow account. Id. In 1993, Ms. Craft brought an action to quiet title to the proceeds being held in the escrow account. Id.

In response, the United States argued that the federal tax lien attached to the residence, even though the Crafts held it as tenants by the entirety. Id. The district court rejected that argument, and the United States appealed. When the case reached the Court of Appeals for the Sixth Circuit, the court held that the federal tax lien did not attach to the entireties property. Id. at 643. This is because under Michigan law, a spouse does not possess a separate interest in the entireties property. Id. at 643-44. As the Court of Appeals stated, "it is well established that one spouse does not possess a separate interest in an entireties property . . . a federal tax lien against one spouse cannot attach to property held by that spouse as an entireties estate." Id. at 643. In addition, the court held that "Michigan law does not recognize a severable future interest held by one spouse in an entireties property." Id. at 644 (citations omitted). The United States then appealed to the Supreme Court.

The Supreme Court reversed the Court of Appeals's decision, finding that a federal tax lien attached to the delinquent taxpayer's interest in the entireties property. 535 U.S. 274, 289 (2002). The Court began its analysis by stating, "[w]hether the interests of respondent's husband in the property he held as a tenant by the entirety constitutes 'property and rights to property' for the purposes of the federal tax lien statute . . . is ultimately a question of federal law. The answer to this federal question, however, largely depends upon state law. The federal tax lien statute itself creates no property rights but merely attaches consequences, federally defined, to rights created under state law." Id. at 278 (quotations and citations omitted). The Court then examined the nature of the property rights at issue:

> In looking to state law, we must be careful to consider the substance of the rights state law provides, not merely the labels the State gives these rights or the conclusions it draws from them. Such state law labels are irrelevant to the federal question of which bundles of rights constitute property that may be attached by a federal tax lien.

Id. at 279. The Court ignored the label of "tenants by the entireties," and instead examined the

individual rights created under Michigan law.  Id. at 279-282.  These individual rights included:

> [T]he right to use the property, the right to exclude third parties from it, the right to a share of income produced from it, the right of survivorship, the right to become a tenant in common with equal shares upon divorce, the right to sell the property with the respondent's consent and to receive half the proceeds with such a sale, the right to place an encumbrance on the property with the respondent's consent, and the right to block respondent from selling or encumbering the property unilaterally.

Id. at 282.  The Court recognized that the most essential property rights–the right to use property, to receive income produced by it, and the right to exclude others from it–"alone may be sufficient to subject the [delinquent taxpayer's] interest in the entireties property to the federal tax lien." Id. at 283.  This is because these rights "gave [the delinquent taxpayer] a substantial degree of control over the entireties property, and . . . in determining whether a federal taxpayer's state-law rights constitute property or rights to property, *[t]he important consideration is the breadth of the control the [taxpayer] could exercise over the property*." Id. (emphasis added) (quotations and citations omitted).  In conclusion, the Supreme Court held that the delinquent taxpayer's interest in the entireties property constituted "property" or "rights to property" within the meaning of 26 U.S.C. § 6321.  Id. at 289.

In the present case, it is unclear what type of property rights Mr. Buaiz has in the Rocky Springs Property.  In particular, it is unclear whether Mr. Buaiz and Ms. Buaiz were tenants by the entireties, whether they had homestead estates, etc.  Without knowing what type of property right is at issue, the Court has insufficient information to order a foreclosure sale.

Accordingly, the United States's Motion for Summary Judgment [Doc. 66] is **DENIED AS PREMATURE**, to the extent that it seeks a foreclosure sale of the Rocky Springs Property.  The parties are **ORDERED** to brief the Court on: (1) what type of property interests Mr. Buaiz and Ms.

Buaiz (now her heirs[4]) had, and/or currently have, in the Rocky Springs Property; (2) what type of future property interests, if any, Mr. Buaiz has in the Rocky Springs Property; and (3) what effect, if any, Ms. Buaiz's death has on the United States's ability to foreclose upon the Rocky Springs Property. **The briefs are due by NOVEMBER 29, 2010.**

Assuming that Mr. Buaiz has a property interest in the Rocky Springs Property (within the meaning of 26 U.S.C. § 6321), the parties are **ORDERED** to brief the Court, in applying the factors set forth in Rodgers, 461 U.S. at 710-711, as to whether the Rocky Springs Property should be sold in a foreclosure sale pursuant to 26 U.S.C. § 7403(c). The Court of Appeals for the Sixth Circuit has held that while the Rodgers test is not mandatory, it should be applied if the foreclosure sale would cause an undue hardship to an innocent third party:

> . . . the Rodgers Court did not mandate application of the four-factor balancing test before a district court could order a sale under § 7403. To the contrary, the Rodgers Court established the balancing test as a requirement only after the district court first determines that a § 7403 sale would cause undue hardship to an innocent third-party; before exercising its limited discretion not to order a sale, a district court must justify that decision by means of the Rodgers balancing test.

United States v. Barr, No. 09-1710, 2010 WL 3023985, at *4 (6th Cir. Aug. 4, 2010).

In the present case, foreclosure may have an undue hardship on potentially innocent third parties: the children. It is unclear how old the children are, or whether any currently live at the Rocky Springs Property. In its Amended Complaint, the United States asserts that "the defendant Merl Alan Crumpley resides at 351 Gammon Springs Road, Bean Station, Tennessee . . ." [United States's Amended Complaint, Doc. 61 at 2]. However, it is unclear where the other children live, and thus, what effect foreclosure would have on them. The parties are **ORDERED** to brief the

---

[4] *See* Part III.F.

Court on each of the four factors set forth in <u>Rodgers</u>, 461 U.S. at 710-11, as it applies to this case. **The briefs are due by NOVEMBER 29, 2010.**

### F. The Children of Bonnie Buaiz Shall Be Substituted As Defendants

On August 24, 2010, the United States filed a Motion to Substitute [Doc. 79]. It also filed a "Suggestion of Death" regarding Ms. Buaiz [Doc. 80]. The United States has provided a copy of Ms. Buaiz's Death Certificate, which states that Ms. Buaiz died on January 31, 2010. [<u>Id</u>.]. In addition, the United States claims that Ms. Buaiz died without leaving a will. [Doc. 79. at 2]. Furthermore, the United States has identified that Ms. Buaiz has four living children: (1) Merl Alan Crumpley[5]; (2) Jill Susan Harbin; (3) Joseph Anthony Buaiz, III; and (4) Bethany Sue Buaiz. [<u>Id</u>.].

The United States requests that Ms. Buaiz's successors in interest in the Rocky Springs Property—that is, her children—be substituted as Defendants, pursuant to Rule 25 of the Federal Rules of Civil Procedure. [<u>Id</u>.]. Under that rule, "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party. . ." Fed. R. Civ. P. 25(a).

Under Tennessee's intestate succession statute, when a spouse dies without leaving a will, the other spouse takes one-third of the decedent's intestate estate if the decedent has surviving children (or "issue"). T.C.A. § 31-2-104. Because there are surviving children, Mr. Buaiz takes one-third of Ms. Buaiz's intestate estate, which includes any property interest she had in the Rocky Springs Property. <u>Id</u>. In addition, each of the children take an equal share of the remaining intestate estate. <u>Id</u>. Thus, one-third of Ms. Buaiz's intestate estate has passed to Mr. Buaiz, and the children each own one-sixth of her intestate estate. <u>Id</u>.

---

[5] The Court notes that Merl Alan Crumpley is already a Defendant, and thus does not need to be substituted.

Accordingly, the United States's Motion to Substitute [Doc. 79] is **GRANTED**, whereby Jill Susan Harbin, Joseph Anthony Buaiz, III, and Bethany Sue Buaiz **SHALL BE SUBSTITUTED AS DEFENDANTS**. The United States shall effect service upon these Defendants within fourteen days of entry of this Memorandum and Order, as provided in Rule 25(a)(3) of the Federal Rules of Civil Procedure. In addition, Bonnie Buaiz is **HEREBY REMOVED AS A DEFENDANT**.

## IV.    CONCLUSION

For the foregoing reasons, the United States's Motion for Summary Judgment [Doc. 66] is **GRANTED IN PART AND DENIED IN PART**. The Court makes the following rulings:

- ■ The Court has subject matter jurisdiction in this case;

- ■ The United States's claims are not barred by the doctrine of claim preclusion;

- ■ The Golden Light Ministry was Joseph Buaiz's alter ego;

- ■ The federal tax lien filed on July 31, 1997 attached to Joseph Buaiz's "property" and "rights to property," which includes any property interest he has in the Rocky Springs Property;

- ■ The parties are **ORDERED** to brief the Court on: (1) what type of property interests Joseph Buaiz and Bonnie Buaiz (now her heirs ) had, and/or currently have, in the Rocky Springs Property; (2) what type of future property interest, if any, Joseph Buaiz has in the Rocky Springs Property; and (3) what effect, if any, Bonnie Buaiz's death has on the United States's ability to foreclose upon the Rocky Springs Property. **The briefs are due by NOVEMBER 29, 2010.**

- ■ Assuming that Joseph Buaiz has a property interest in the Rocky Springs Property, the parties are **ORDERED** to brief the Court, in applying the factors set forth in United States v. Rodgers, 461 U.S. 677, 710-11 (1983), as to whether the Rocky Springs Property should be sold in a foreclosure sale pursuant to 26 U.S.C. § 7403(c). **The briefs are due by NOVEMBER 29, 2010.**

In addition, the United States's Motion to Substitute [Doc. 79] is **GRANTED**, whereby Jill Susan Harbin, Joseph Anthony Buaiz, III, and Bethany Sue Buaiz **SHALL BE SUBSTITUTED AS DEFENDANTS**. The United States shall effect service upon these Defendants within fourteen

days of entry of this Memorandum and Order, as provided in Rule 25(a)(3) of the Federal Rules of Civil Procedure.  In addition, Bonnie Buaiz is **HEREBY REMOVED AS A DEFENDANT**.

Finally, because the only remaining issue in this case involves whether a foreclosure sale is appropriate, the final pretrial conference date of September 28, 2010, and the trial date of October 5, 2010, **ARE HEREBY CANCELLED**.


**IT IS SO ORDERED**.


**ENTER:**


_____s/ Thomas W. Phillips_____
United States District Judge