# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:07-CV-83** |
| | ) | **(Phillips)** |
| **JOSEPH BUAIZ,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motions to Dismiss [Docs. 85, 86] filed by defendants

Joseph Buaiz III and Bethany Buaiz. The United States filed this civil action on March 8, 2007,

seeking to foreclose upon real property owned by a delinquent taxpayer, Joseph Buaiz. [United

States's Complaint, Doc. 1]. Having reviewed the pleadings, exhibits, and relevant caselaw, it is

now time for the Court to decide whether to order a foreclosure sale under 26 U.S.C. § 7403(c).

Because there are innocent third-parties with interests in the property, the Court will apply the

factors set forth in United States v. Rodgers, 461 U.S. 677, 710-11 (1983).

Based upon the following, the Motions to Dismiss [Docs. 85, 86] are **DENIED**. First, there

is no evidence that Joseph Buaiz III or Bethany Buaiz properly disclaimed their interests in the real

property, as required by Tennessee law, T.C.A. § 31-103-103. Second, having applied the Rodgers

factors, 461 U.S. at 710-11, the United States is hereby **AUTHORIZED** to sell the real property in

a foreclosure sale pursuant to 26 U.S.C. § 7403(c). In addition, the United States is **INSTRUCTED**

to file a proposed foreclosure order, consistent with this Memorandum and Order, that includes

1

updated tax liability figures for Joseph Buaiz.

## I.  BACKGROUND

Joseph Buaiz did not file federal income tax returns ("Form 1040") for the 1993 and 1994

tax years.  As a result of his delinquency, the United States filed a federal tax lien in 1995 against

his property interests (both present and future).  [IRS Federal Tax Lien Notice, Doc. 66-8].  Pursuant

to 26 U.S.C. § 7403, "the government may file a civil action to enforce the lien and subject the

delinquent taxpayer's property to the payment of such tax liability."  United States v. Offiler, 336

F. App'x 907, 908 (11th Cir. 2009) (citing 26 U.S.C. § 7403(a)).  To satisfy its claim, the United

States seeks to foreclose upon real property located at 1795 Rocky Springs Road, Bean Station,

Grainger County, Tennessee (the "Rocky Springs Property").  See 26 U.S.C. § 7403(c) (stating that

the Court "may decree a sale of such property . . . and a distribution of the proceeds of such sale").

Before it can decide whether foreclosure is appropriate, the Court must recognize the various

ownership interests in the property.  See Rodgers, 461 U.S. at 683 (in determining property interests

for federal tax law purposes, "the definition of underlying property interests is left to state law, [and]

the consequences that attach to those interests is a matter left to federal law").  On February 3,1995,

Knox Samsel and Betty Samsel conveyed a parcel of the real property (now referred to as the Rocky

Springs Property) to Bonnie Buaiz, the deceased wife of Joseph Buaiz.  [February 3, 1995 Warranty

Deed, Doc. 66-4] [granting property to Bonnie Buaiz, "her heirs and assigns, in fee simple forever"].

On April 1, 1996, Albert Samsel and Martha Samsel conveyed to Bonnie Buaiz another parcel of

real property (now referred to as the Rocky Springs Property).  [April 1, 1996 Warranty Deed, Doc.

66-5] [granting remaining portion of real property to Bonnie Buaiz, "her heirs and assigns, in fee

simple forever"].  On September 12, 2003, Bonnie Buaiz quitclaimed her interest in the Rocky

2

Springs Property to the Golden Light Ministry (the "Ministry"). [Quitclaim Deed of September 12, 2003, Doc. 66-12]. Prior to this quitclaim, Bonnie Buaiz had a fee simple interest in the Rocky Springs Property.

In its previous Memorandum and Order [Doc. 82, at 14-19], the Court held that the Ministry was the alter ego of Joseph Buaiz. As previously stated, the federal tax lien (which was assessed in July 1997) attached to Joseph Buaiz's property interests, both present and future. Consequently, when Bonnie Buaiz transferred her interest in the Rocky Springs Property to the Ministry–in actuality, Joseph Buaiz–the federal tax lien attached to the entire fee simple interest in the property.

On February 27, 2004, Joseph Buaiz–once again acting through the Ministry–quitclaimed his interest to Bonnie Buaiz and her son, Merl Alan Crumpley. [Quitclaim Deed of February 27, 2004, Doc. 66-16]. Even though Joseph Buaiz transferred his interest, the federal tax lien remained attached to the Rocky Springs Property. *See* Rodgers, 461 U.S. at 691 n. 16 ("Of course, once a lien has attached to an interest in property, the lien cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of the interest.") (citations omitted); United States v. Bank of Celina, 721 F.2d 163, 166 (6th Cir. 1983) ("One effect of a tax lien is that a third party possessing property or rights to property belonging to a taxpayer holds such property subject to the lien, unless the third party has a prior lien or comes within one of the exceptions listed in 26 U.S.C. § 6321.") (citations omitted). Notably, the Court has already determined that none of the exceptions under 26 U.S.C. § 6321 apply. [Memorandum and Order, Doc. 82, at 21].

In January 2010, Bonnie Buaiz passed away. [Suggestion of Death, Doc. 80]. At the time of her death, Bonnie Buaiz and Merl Alan Crumpley shared equal interests in the Rocky Springs

Property as tenants in common, or as joint tenants with no right of survivorship.[1]  Generally, the

shares or interests of joint tenants are presumed to be equal:

> The shares or interests of joint tenants are presumed to be equal,
> although the contrary may be shown by proof.  Generally, the fact of
> a greater contribution to the purchase price by one joint tenant will
> not overcome the presumption of equality.  The beneficial interest of
> a joint tenant who furnishes nothing for the purchase of the property,
> likewise, is generally precisely the same as that of his or her co-
> owner who furnishes all of the consideration for the purchase of the
> jointly held property.

Harris v. Taylor, No. W2004-02855-COA-R3-CV, 2006 WL 772007, at *3 (Tenn. Ct. App. Mar.

28, 2006) (citations omitted).  When Joseph Buaiz quitclaimed his fee simple interest to Bonnie

Buaiz and Merl Alan Crumpley on February 27, 2004, he received "consideration of the sum of

$0.00" from both parties.  [February 27, 2004 Quitclaim Deed, Doc. 66-16].  There is no evidence

---

[1]  As the Tennessee Court of Appeals has explained, a joint tenancy is "[a] tenancy with two or
more coowners who take identical interests simultaneously by the same instrument and with the same
right of possession."  Harris v. Taylor, No. W2004-02855-COA-R3-CV, 2006 WL 772007, at *3 (Tenn.
Ct. App. Mar. 28, 2006) (citing BLACK'S LAW DICTIONARY 1505 (8th ed. 2004)).  Moreover, Tennessee
has abolished the common rule inferring joint rights of survivorship for joint tenancies:

> At common law, when a conveyance was made to two or more unmarried
> persons where the unities of time, title, interest and possession were present, a joint
> tenancy with the right of survivorship was created by operation of law, unless the
> instrument specified that creation of a tenancy in common was intended.  Jones v. Jones,
> 206 S.W.2d 801 (1947).  Tennessee abolished the survivorship aspect of joint tenancies
> by operation of law by statute in 1784.  See T.C.A. § 66-1-107 (1993) (current version of
> the 1784 statute).  However, parties can still create estates of survivorship where the
> instrument creating the estate, whether deed or will, evidences such an intention.  Jones,
> 206 S.W.2d at 803; McLeroy v. McLeroy, 40 S.W.2d 1027 (1931).

Bumch v. Bunch, No. 02A01-9705-CH-00106, 1998 WL 46217, at *1 (Tenn. Ct. App. Jan. 8, 1998).  The
February 27, 2004 Quitclaim Deed [Doc. 66-16] did not create a joint right of survivorship because it did
not contain express language about survivorship.  See Peebles v. Peebles, 443 S.W.2d 469, 470 (Tenn.
1969) (recognizing that courts will not infer a right of survivorship unless it is expressly granted in the
deed).  Because the Deed [Doc. 66-16] did not expressly grant a right of survivorship, Bonnie Buaiz and
Merl Alan Crumpley shared interests in the Rocky Springs Property as tenants in common, or as joint
tenants with no right of survivorship.

4

that Bonnie Buaiz paid more for the property than Merl Alan Crumpley. Consequently, neither party has overcome the presumption that they shared equal interests in the Rocky Springs Property. *See* Harris, 2006 WL 772007, at *3.

When Bonnie Buaiz passed away in January 2010, she did not leave a will or testament. [Memorandum and Order, Doc. 82, at 28-29]. As a result, her interests in the Rocky Springs Property passed under Tennessee's intestate succession statute, T.C.A. § 31-2-104. [Id.]. When a spouse dies without leaving a will, the surviving spouse takes one-third of the decedent's intestate estate if the decedent has surviving children (or "issue"). T.C.A. § 31-2-104. At the time of her death, Bonnie Buaiz had four children: (1) Merl Alan Crumpley; (2) Jill Harbin; (3) Joseph Buaiz III; and (4) Bethany Buaiz. Because there were surviving children, Joseph Buaiz received one-third of Bonnie Buaiz's intestate estate, which includes her interest in the Rocky Springs Property. In addition, each of the children received an equal share of the remaining intestate estate. Assuming that Joseph Buaiz III and Bethany Buaiz did not properly disclaim their interests[2]:

■   Joseph Buaiz has an undivided <u>two-twelfth interest</u> in the Rocky Springs Property. As a result of intestate succession, he gained one-third of the one-half interest previously owned by Bonnie Buaiz in the Rocky Springs Property.

■   Merl Alan Crumpley has an undivided <u>seven-twelfth interest</u> in the Rocky Springs Property. This represents his one-half interest (or 6/12) in the property that he acquired from the February 27, 2004 Deed [Doc. 66-16], as a tenant in common with Bonnie Buaiz. In addition, he received a one-twelfth interest as a result of intestate succession, T.C.A. § 31-2-104. The four surviving children, including Merl Alan Crumpley, each received an equal share of 2/3 of Bonnie Buaiz's intestate estate (the other 1/3 went to Joseph Buaiz as her husband). In dividing the 2/3 of the intestate estate among the four children, each child received an overall one-twelfth interest in the Rocky Springs Property. Once the one-twelfth interest gained from intestate succession is added to Merl Alan Crumpley's pre-existing one-half interest (or 6/12), he has an overall 7/12 interest in the Rocky Springs Property.

---

[2]   *See* Part II.A.

5

- Joseph Buaiz III has an undivided <u>one-twelfth interest</u> in the Rocky Springs Property as a result of intestate succession.

- Jill Harbin has an undivided <u>one-twelfth interest</u> in the Rocky Springs Property as a result of intestate succession.

- Bethany Buaiz has an undivided <u>one-twelfth interest</u> in the Rocky Springs Property as a result of intestate succession.

On September 3, 2010, the Court granted and denied in part the United States's Motion for Summary Judgment. [Memorandum and Order, Doc. 82]. In particular, the Court held that the United States was premature in requesting a foreclosure sale, and therefore ordered the parties to submit briefs on the following issues: (1) the type of property interests Joseph Buaiz and Bonnie Buaiz have or had in the Rocky Springs Property; (2) the future interests Joseph Buaiz has in the Rocky Springs Property; (3) the effect of Bonnie Buaiz's death on the right of the United States to foreclose on the Rocky Springs Property; and (4) whether the Rocky Springs Property should be sold in a foreclosure sale pursuant to 26 U.S.C. § 7403(c), having applied the <u>Rodgers</u> factors, 461 U.S. at 710-11. On February 28, 2011, the United States submitted its brief, arguing that foreclosure was appropriate under 26 U.S.C. § 7403(c). [Doc. 92]. Joseph Buaiz has not responded in opposition.

After Bonnie Buaiz died in January 2010, the Court substituted three of her children (Jill Harbin, Joseph Buaiz III, and Bethany Buaiz) as defendants. [Memorandum and Order, Doc. 82, at 28-29]. The Court did not substitute Merl Alan Crumpley, as he was already a defendant in the lawsuit. [<u>Id.</u>]. As previously stated, each of the children received an interest in the Rocky Springs Property following Bonnie Buaiz's death. Two of the children, Joseph Buaiz III and Bethany Buaiz, request to be dismissed from the lawsuit. [Motions to Dismiss, Docs. 85, 86]. In support, Joseph Buaiz III and Bethany Buaiz state that they have relinquished their interests in the Rocky Springs Property. [<u>Id.</u>]. As an initial matter, the Court must therefore determine whether Joseph Buaiz III

6

and Bethany Buaiz properly disclaimed their interests under Tennessee law, T.C.A. § 31-103-103. Next, having determined the parties' respective interests, the Court will decide whether a foreclosure sale under 26 U.S.C. § 7403(c) is appropriate.

## II.    ANALYSIS

### A.    There is No Evidence that Joseph Buaiz III or Bethany Buaiz Properly Disclaimed their Interests in the Rocky Springs Property

Joseph Buaiz III and Bethany Sue Buaiz are the children (and therefore "heirs at law") of previous defendant, Bonnie Buaiz. The Court substituted Joseph Buaiz III and Bethany Sue Buaiz as defendants after Bonnie Buaiz died in January 2010. [Memorandum and Order, Doc. 82, at 28-29]. In their Motions to Dismiss [Docs. 85, 86], Joseph Buaiz III and Bethany Buaiz state that they have relinquished "any and all rights and claims to the [Rocky Springs Property] at issue here on August 25, 2010." [Joseph Buaiz III's Motion to Dismiss, Doc. 85, at 1, Bethany Buaiz's Motion to Dismiss, Doc. 86, at 1]. In support, they provided copies of an "Affidavit of Relinquishment" that they filed with the Office of the Registrar of Deeds for Grainger County, Tennessee (which is where the Rocky Springs Property is located). [Joseph Buaiz III's "Affidavit of Relinquishment of Rights," Doc. 85, at 4, Bethany Buaiz's "Affidavit of Relinquishment of Rights," Doc. 86, at 4]. Despite filing their disclaimers with the county registrar, there is no evidence that they fully complied with Tennessee law, T.C.A. § 31-1-103(b)(2).

To constitute an effective disclaimer under Tennessee law, it must be filed in the county registrar's office **and** "with the court in which the decedent's estate proceedings are or would be pending . . ." T.C.A. § 31-1-103(b)(2) (the provision governing disclaimers of inherited property). While Joseph Buaiz III and Bethany Buaiz filed their disclaimers with the county registrar's office, there is no evidence that they filed disclaimers with the court "in which the decedent's estate

proceedings [Bonnie Buaiz] are or would be pending . . . ."  Id.  See also Faught v. Estate of Faught, 730 S.W.2d 323, 325 (Tenn. 1987) (holding that *all* of the requirements under T.C.A. § 31-103-103 must be complied with in order to constitute an effective disclaimer).  Consequently, the disclaimers filed with the county registrar's office [Docs. 85-4, 86-4] are ineffective to relinquish their rights in the Rocky Springs Property.  The Motions to Dismiss [Docs. 85, 86] are therefore **DENIED**, whereby Joseph Buaiz III and Bethany Buaiz shall remain as defendants in this lawsuit.

### B.    Foreclosure is Appropriate Under Rodgers

#### 1.    Introduction

As the Court previously explained, when Joseph Buaiz failed to pay an assessed tax, a lien in that amount arose in favor of the United States "upon all property and rights, whether real or personal, belonging to such person."  26 U.S.C. § 6321.  Notably, the lien "arise[s] at the time the assessment is made and **shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied**. . . ."  26 U.S.C. § 6322 (emphasis added).  Consequently, when Joseph Buaiz took title to the Rocky Springs Property in September 2003–through his alter ego, the Ministry–the federal tax lien attached to the entire fee simple of the Rocky Springs Property.  *See* United States v. Bess, 357 U.S. 51, 57 (1958) ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter whose hands the property goes, it passes cum onere.").  The fact that Joseph Buaiz later quitclaimed his interest to Bonnie Buaiz and Merl Alan Crumpley on February 27, 2004, does not affect the federal tax lien.  The federal tax lien attached to the Rocky Springs Property in September 2003, and has remained there ever since.

Pursuant to 26 U.S.C. § 7403(c), courts may order a foreclosure sale of property to satisfy

8

the tax indebtedness of a delinquent taxpayer:

of

> Adjudication and decree- The court shall, after the parties have been duly notified the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, *may decree a sale of such property*, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

26 U.S.C. § 7403(c) (emphasis added). While Section 7403(c) does not *require* district courts to order foreclosure sales (once it has been determined that the federal tax lien attached to the real property), courts have limited discretion in refusing a sale. Rodgers, 461 U.S. at 706-09. When innocent third-parties are involved–that is, when individuals besides the delinquent tax-payer have an interest in the property–and those individuals may be harmed or prejudiced by a foreclosure sale, courts should apply the following factors to determine whether a foreclosure sale is appropriate:

> First, a court should consider the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes. . . .

> Second, a court should consider whether the third party with a non-liable separate interest in the property would, in the normal course of events . . . have a legally recognized expectation that the separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors. . . .

> Third, a court should consider the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompensation . . .

> Fourth, a court should consider the relative character and value of the non-liable and liable interests of the property . . .

Id. at 710-11. In considering these factors, courts should remember to use their discretion "rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." Id. at 711. The Sixth Circuit has held that while the Rodgers

9

test is not mandatory, it should be applied if the foreclosure sale would cause an undue hardship to innocent third-parties:

> . . . the <u>Rodgers</u> Court did not mandate application of the four-factor balancing test before a district court could order a sale under § 7403. To the contrary, the <u>Rodgers</u> Court established the balancing test as a requirement only after the district court first determines that a § 7403 sale would cause undue hardship to an innocent third-party; before exercising its limited discretion not to order a sale, a district court must justify that decision by means of the <u>Rodgers</u> balancing test.

<u>United States v. Barr</u>, 617 F.3d 370, 375-76 (6th Cir. 2010). As the Court previously stated, there are five individuals with interests in the Rocky Springs Property. Because innocent third-parties may be harmed by a foreclosure sale, the Court finds it appropriate to apply <u>Rodgers</u>, 461 U.S. at 710-11.

### 1. First Factor: The United States Would Be Prejudiced if it Could Not Foreclose Upon the Rocky Springs Property

As for the first factor, courts should consider "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes." <u>Rodgers</u>, 461 U.S. at 710. In this case, the federal tax lien attached to the entire fee simple interest of the Rocky Springs Property on September 12, 2003, when Bonnie Buaiz quitclaimed her interest to Joseph Buiz (acting through the Ministry). Any subsequent transfer of the Rocky Springs Property–including the quitclaim of the property to Merl Alan Crumpley and Bonnie Buaiz in February 2004–became subject to the federal tax lien. *See* <u>Bank of Celina</u>, 721 F.2d at 166 ("One effect of a tax lien is that a third party possessing property or rights to property belonging to a taxpayer holds such property subject to the lien, unless the third party has a prior lien or comes within one of the exceptions listed in 26 U.S.C. § 6321." ) (citations omitted).

Clearly, the United States would be prejudiced if it could not foreclose upon the Rocky

10

Springs Property. Selling the Rocky Springs Property may be the only way that the United States

satisfies its debt. To this date, Joseph Buaiz has not paid taxes for the 1993 and 1994 tax years. It

is unclear whether Joseph Buaiz has any other assets to satisfy his debt. As the Supreme Court

stated in Rodgers, the United States has a "paramount interest" in collecting taxes. 461 U.S. at 711.

There is no reason why the United States's interests should be undermined in this case. This is

especially true given that Joseph Buaiz may not have other property to satisfy his debt. Accordingly,

this factor weighs in favor of the United States.

> **2.      Second Factor: The Innocent Third-Parties Do Not Have a Legally Recognized Expectation that the Rocky Springs Property Would Not Be Subject to a Forced Sale**

Under Tennessee law, courts may order partition sales of real property owned by joint

tenants. *See* T.C.A. § 29-27-101 (providing that any co-tenant of property "is entitled to partition

thereof, or sale for partition, under the provisions of this chapter"). Where jointly held property is

sold, "the sale proceeds are to be divided between the parties in accordance with their rights as

determined by the court." Ridley v. Watson, No. M2007-01241-COA-R3-CV, 2008 WL 3895952,

at *3 (Tenn. Ct. App. Aug. 22, 2008) (citing T.C.A. § 29-27-217). As the Tennessee Supreme Court

has made clear, courts have "a statutory and inherent right to adjust the equities and settle all claims

between or among the parties . . ." Yates v. Yates, 571 S.W.2d 293, 296 (Tenn. 1978).

Because Tennessee courts have the authority to order partition sales of real property owned

by joint tenants, the innocent third-parties in this case do not have a legally recognized expectation

that the Rocky Springs Property would not be subject to a forced sale. The Tennessee courts are also

clear that innocent third-parties are entitled to their equitable share of the proceeds. *See* T.C.A. §

29-27-217 ("The rights of the parties shall be settled by the judgment or decree of the court and the

proceeds divided in accordance therewith."). To determine equitable compensation, courts apply

the following factors:

> There are five primary principles governing compensation in the partition context. First, the courts will compensate a cotenant who improved the jointly owned property as long as the improvements enhanced the property's value. Generally, the amount of this compensation cannot exceed the amount by which the improvements enhanced the land's value. Second, cotenants must equally contribute to satisfying encumbrances on the property. Third, cotenants must also equally contribute to expenses for necessary repairs and maintenance of the jointly owned property. However, 'a cotenant is not entitled to credit for the value of personal services in managing and caring for the property,' unless the cotenants have an agreement to the contrary. Fourth, a cotenant with sole possession of the property is liable to other cotenants for any profits received in excess of his or her pro rata share. Fifth, a cotenant with sole possession of the property who has excluded his or her cotenants from the property or who has denied their title to any part of the property, must pay rent to the cotenants for the use and occupation of the property regardless of the profits received.

Parker v. Lambert, 206 S.W.3d 1, at *5 n.2 (Tenn Ct. App. 2006) (internal citations omitted). This

is consistent with the Supreme Court's holding in Rodgers that non-delinquent parties are entitled

to their equitable share of the proceeds. 461 U.S. at 677 (providing that if the home is sold, the

"non-delinquent spouse is entitled, as part of the distribution of proceeds required under § 7403, to

so much of the proceeds as represents complete compensation for the loss of the homestead estate");

Barr, 617 F.3d at 373 (recognizing that both the United States and innocent third-parties should

receive "fair compensation" for their interests in property that is sold during a foreclosure sale under

26 U.S.C. § 7403(c)) (citation omitted). Accordingly, this factor weighs in favor of the United

States.

> **3.** **Third Factor: The Innocent Third-Parties Are Not Prejudiced By a Foreclosure Sale**

12

In Rodgers, the Supreme Court instructed courts to "consider the likely prejudice to the third party, both in personal dislocation costs and in the sort of practical undercompensation [that comes from a foreclosure sale]." 461 U.S. at 711. Notably, three of the four co-owners do not oppose a foreclosure sale of the Rocky Springs Property. For example, Merl Alan Crumpley has filed a stipulation "that the United States' tax liens may be foreclosed against [the Rocky Springs Property], and that this property may be sold at judicial sale under the aegis of this Court." [Stipulation by Merl Alan Crumpley, Doc. 83]. Joseph Buaiz III and Bethany Buaiz have also filed disclaimers of their interests in the Rocky Springs Property. While their stipulations did not have any legal effect, *see* Part II.A., they are nonetheless important statements. Their Stipulations [Docs. 85, 86] clearly indicate that they would not be prejudiced by a foreclosure sale.

The fourth innocent party, Jill Harbin, has not indicated whether she would oppose a foreclosure sale. While she has not filed a response, the Court has given her plenty of time to submit a brief. In fact, it has been almost an entire year since the Court directed the parties to submit briefs on the Rodgers factors. [Memorandum and Order, Doc. 82]. In addition, it appears that Jill Harbin does not currently live at the Rocky Springs Property. In response to an interrogatory, Joseph Buaiz stated that Jill Harbin resides at 1040 Brady Road, White Pine, Tennessee–not the Rocky Springs Property. [United States's Brief, Doc. 92, at 10]. There is simply no evidence that Jill Harbin would be prejudiced–whether by dislocation costs or other considerations–by a foreclosure sale of the property.

Finally, it makes no difference whether the delinquent taxpayer opposes the foreclosure sale. *See* Rodgers, 461 U.S. at 709 (stating that it could "think of virtually no circumstances . . . in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent

taxpayer himself or herself"). The concern in <u>Rodgers</u> was about the innocent third-parties, not the delinquent taxpayer. In this case, it does not appear that any of the innocent third-parties would be prejudiced by a foreclosure sale of the Rocky Springs Property. Accordingly, this factor weighs in favor of the United States.

> **4.      Fourth Factor: The Character and Value of the Property Supports a Foreclosure Sale**

In viewing the "relative character and value of the non-liable and liable interests held in the property," Rodgers, 461 U.S. at 711, the Court must once again emphasize that three of the innocent parties in this case do not oppose a foreclosure sale. Notably, the person with the largest interest in the Rocky Springs Property, Merl Alan Crumpley (who has a seven-twelfth interest), does not oppose a foreclosure sale. [Stipulation by Merl Alan Crumpley, Doc. 83]. Likewise, Joseph Buaiz III and Bethany Buaiz (each with one-sixth interests) do not oppose a foreclosure sale. [Disclaimers, Docs. 85, 86]. Even if Jill Harbin opposed the foreclosure sale–and again, there is no evidence that she would–the majority of persons with interests in the Rocky Springs Property do not oppose a foreclosure sale. This is significant.

In sum, the "character and value" of the property supports a foreclosure sale. No further analysis is required. The innocent parties themselves state that they will not be prejudiced by a foreclosure sale. Accordingly, this factor weighs in favor of the United States.

## III.      CONCLUSION

Based upon the foregoing, the Motions to Dismiss [Docs. 85, 86] are **DENIED**. First, there is no evidence that Joseph Buaiz III and Bethany Buaiz properly disclaimed their interests in the real property, as required by Tennessee law, T.C.A. § 31-103-103. Second, having applied the <u>Rodgers</u> factors, 461 U.S. at 710-11, the Court finds that innocent third-parties will not be unduly prejudiced

14

by a foreclosure sale. The United States is hereby **AUTHORIZED** to sell the real property in a foreclosure sale pursuant to 26 U.S.C. § 7403(c). This is the real property located at 1795 Rocky Springs Road, Bean Station, Grainger County, Tennessee.

The Rocky Springs Property shall be sold by an officer of the Court with proceeds first being applied to costs of sale and thereafter to the United States in satisfaction to the tax liabilities of Joseph Buaiz. The remaining proceeds of the sale shall then be divided to the innocent third-parties, based upon their interests in the real property, as previously set forth in this Memorandum and Order, *see* Part I. In addition, the United States is **INSTRUCTED** to file a proposed foreclosure order, consistent with this Memorandum and Order, that includes updated tax liability figures for Joseph Buaiz.


**IT IS SO ORDERED**.


**ENTER:**


_____s/ Thomas W. Phillips_____
United States District Judge

15